UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:08-cr-00240-CEH-CPT

JAMES ROBERTSON
_____/

## **O R D E R**

This matter comes before the Court upon the Defendant's Motion for Compassionate Release or Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 249). The Government filed a response in opposition (Doc. 251), to which the Defendant replied (Doc. 254). The Court, having considered the motion and being fully advised in the premises, will deny Defendant's Motion for Compassionate Release.

**I.  BACKGROUND**

After a multi-week jury trial, Defendant James Robertson was found guilty of two counts of Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(1) and (2). Doc. 179 at 1; Doc. 251 at 7. Defendant was sentenced on December 22, 2011, to a total term of life imprisonment for counts one and two, to run concurrently. Doc. 179 at 1–2. Defendant is a 41-year-old male who is incarcerated for life at Coleman II USP. *See* Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last accessed Nov. 30, 2020). On September 11, 2020, Defendant filed the instant Motion for Compassionate Release ("Motion") requesting modification of his sentence due to the COVID-19 pandemic, coupled with his medical condition. Doc. 249.

Defendant contends that he should be afforded compassionate release because he has a qualifying medical condition and extraordinary and compelling reasons exist for the granting of his motion. *Id.* at 1. Specifically, Defendant claims that he suffers from asthma and that according

to the CDC, this condition could "contribute to complications from COVID-19 [with] the potential to lead to death." *Id.* at 2. Defendant also contends that Coleman II USP accepted more than 85 COVID-19 positive inmates into its complex and is acting with "deliberate indifference" to the health of inmates. *Id.* at 3. Defendant asserts that staff refuse to wear masks and have only feigned compliance with CDC guidelines. *Id.* at 4–5. In addition, Defendant states that the Coleman complex was at the time of filing, a "hot spot" of COVID-19 which is an extraordinary and compelling reason for his compassionate release. *Id.* at 5. Defendant also notes that he has exhausted his administrative remedies and attaches the Warden of USP Coleman's June 18, 2020 denial of his June 16, 2020 request for compassionate release, as well as a copy of his July 7, 2020 appeal of that decision. *Id.* at 8–10.

In response, the Government details the background of Defendant's crimes, highlighting the serious and heinous nature of the offenses. Doc. 251 at 1–7. The Government notes that Defendant was a member of a Tampa chapter of the white supremacist group Blood and Honor that believes in a "master race" and considers "anyone who [is] nonwhite, homosexual, or homeless to be an enemy and subhuman." *Id.* at 1. The Government explains that in connection with membership in Blood and Honor, Robertson and three others armed themselves and drove around looking for victims during a multi-night crime spree, engaging in activities including the firing of a loaded gun at a Black man, pepper spraying a prostitute, viciously assaulting a homeless man, and eventually murdering two homeless men. *Id.* at 2–7. The Government notes that Robertson beat the first murder victim in the "head, face, and upper torso," while other group members beat and used a club against the man. *Id.* at 4. The Government states that Robertson "jabbed [the man] in the chest, head, and face with the sharp end of [a] tire iron," and "in the eye with the tire iron" bragging that "he had stabbed [the man] through the brain." *Id.* at 4–5. As to the second murder victim, the Government describes how Robertson hit the man with a tire iron while

his co-defendants used a club, cane, and axe against the man. *Id.* at 6. The Government explains that Robertson later washed and discarded all the murder weapons into a river and went with the other Blood and Honor group members to brag to their leader about the murders. *Id.*

Although Defendant did not specify a release to home confinement, the Government construes Defendant's request as such and asserts that only the Bureau of Prisons (BOP) and not the Court has authority to order home confinement. *Id.* at 7–9. The Government further contends that Defendant has not exhausted administrative remedies suggesting that Robertson did not appeal the Warden's June 18, 2020 denial of compassionate release. *Id.* at 11–12. The Government also asserts that Defendant has not established extraordinary and compelling reasons for compassionate relief because Defendant's medical records show his asthma is not severe enough to put him at an increased risk for COVID-19 and that "potential COVID-19 exposure alone is not an extraordinary and compelling reason to grant release." *Id.* at 13–15. The Government also explains that the BOP has had a Pandemic Influenza Plan in place since October 2012 which required preparation for a pandemic and the implementation of cleaning, hygiene, quarantining of sick individuals, and treatment of inmates. *Id.* at 17–18. The Government contends that since April 1, 2020, the BOP has tailored this protocol to prevent inmate exposure and the spread of COVID-19 through actions including quarantining of asymptomatic individuals, social distancing measures, and the issuance of face masks to staff and prisoners. *Id.* The Government also asserts that even if Defendant's mild asthma during COVID-19 did qualify as an extraordinary and compelling reason, Defendant is a danger to the community and the U.S.S.G. § 1B1.13 factors weigh heavily against his release. *Id.* at 18.

Defendant filed a reply to the Government's response, wherein he attempts to reargue the merits of his case and the outcome of the jury trial, claiming government corruption and denying that he is guilty of the murders he was convicted of. He claims, therefore, that he is not (and has

3

never been) a danger to the community. Doc. 254 at 1–11. Because he denies responsibility for the crimes for which he was tried and convicted, Defendant claims that he is "low risk." *Id.* at 22. The Defendant also asserts that despite the Government's claim to the contrary, he provided evidence that he has exhausted his administrative remedies noting the attachments to his Motion, which include the Defendant's appeal of the Warden's denial. *Id.* at 12. Moreover, Defendant claims that his asthma is serious and requires him to use his inhaler three to four times per day and that this in combination with "a full outbreak" at Coleman is an extraordinary and compelling reason for his release. *Id.* at 12–13, 22. Defendant does not supply medical records or documentation of his asthma in his Motion although his problems with asthma are noted in his sentencing report. Doc. 179 at 2.

## II.     LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release. That provision states:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

> unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. . . .

18 U.S.C. § 3582(c)(1) (italics reflecting amendment under First Step Act). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of the BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id.* Courts are to consider the § 3553(a) factors, as applicable, as part of the analysis.[1] *See* §3582(c)(1)(A).

---

[1] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid

5

The defendant, generally, bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (providing that defendant bears the burden of establishing a reduction of sentence is warranted under § 3582(c) due to a retroactive guideline amendment); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *Hamilton* in the context of a § 3582(c) motion for compassionate release).

## III. DISCUSSION

### A. Administrative Exhaustion

Defendant has satisfied administrative exhaustion. Under 18 U.S.C. § 3582(c)(1), a defendant must exhaust administrative remedies within the BOP prior to the filing of a motion for compassionate release. "Section 3582(c)(1)(A) unambiguously provides that a defendant may either move for compassionate release after the defendant has fully exhausted administrative remedies or 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Smith*, No. 3:97-cr-120-J-34PDB, 2020 WL 5106694, at *3 (M.D. Fla. Aug. 31, 2020); *see also United States v. Mack*, No. 3:13-cr-206-J-32MCR, 2020 WL 6044560, at *5–7 (M.D. Fla. Oct. 13, 2020) (finding exhaustion of administrative remedies when it was clear that the warden had received defendant's request for compassionate release and that more than 30 days had passed).

Here, Defendant shows that he made a request for compassionate release to the BOP Warden on June 16, 2020, which was denied on June 18, 2020, and he submits documents dated July 7, 2020, that he represents was an appeal of that denial. Doc. 249 at 8–10. As such, the Government's argument that Defendant did not exhaust administrative remedies is unavailing.

---

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Regardless of whether Defendant's appeal was properly made, more than 30 days have passed since the Warden's receipt of Defendant's initial request. Thus, the Court finds that Defendant has met his burden of showing that he has exhausted administrative remedies and may pursue his claim in this Court.

>    **B.**    **Extraordinary and Compelling Reason**

Although Defendant has established exhaustion of administrative remedies, his motion nevertheless fails to show an extraordinary or compelling reason for compassionate release. In accordance with *Hamilton*, a defendant bears the burden of establishing that compassionate release is warranted. 715 F.3d at 337. Specifically, under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act, a defendant must show (1) that he is 70 years old and has served at least 30 years of incarceration and meets other enumerated criteria, or; (2) that he has an extraordinary and compelling reason for compassionate release. In this case, Defendant is 41 years old and has been incarcerated for less than 30 years. Thus, Defendant does not qualify for compassionate release under the first provision and must demonstrate an extraordinary and compelling reason to satisfy § 3582(c)(1)(A).

"[T]he mere existence of COVID-19 and the possibility it may spread to a particular prison" is not an extraordinary and compelling reason for compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Controlled asthma[2] does not meet the requirements of U.S.S.G. § 1B1.13 as an extraordinary and compelling reason for a prisoner's compassionate release, even when a large number of other prisoners at the facility contracted COVID-19 and

---

[2] According to the Center for Disease Control ("CDC"), COVID-19 risk factors for severity of the illness include *moderate to severe* asthma. The CDC advises asthmatics to keep their asthma under control. CDC, *Assessing Risk Factors for Severe COVID-19 Illness*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/assessing-risk-factors.html (emphasis added).

recovered. *United States v. Alexander*, No. 6:18-cr-124-Orl-37GJK, 2020 U.S. Dist. LEXIS 134347, at *2 (M.D. Fla. July 29, 2020) (holding that a prisoner did not show extraordinary and compelling reasons for compassionate release based on stable medical conditions including controlled asthma when the BOP website noted that a large number of inmates had recovered from COVID-19 but the prison was not currently "plagued with COVID-19 cases"). Here, Defendant fails to provide any medical evidence showing that his asthma is uncontrolled. Further, Defendant does not claim he is not receiving medical care for his condition or is unable to care for himself, but rather makes express reference to having an inhaler that he uses for treatment three to four times daily. Doc. 254 at 12–13, 22.

Defendant claims that the Coleman complex has failed to follow CDC guidelines, is acting with indifference to prisoner's health, and has become a hot spot for COVID-19. *Id.* at 3–5. As of today, BOP website data reflects that zero inmates and 20 staff members are positive for COVID-19 at Coleman II USP where Defendant is housed, with 205 inmates and 14 staff members having recovered from COVID-19 and one inmate death. *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed November 30, 2020). It appears that Defendant's asthma is controlled and that the BOP has implemented adequate measures such that the number of infections is now significantly reduced at Defendant's facility. Thus, because Defendant has failed to show on this record the existence of extraordinary and compelling circumstances to support compassionate release, Defendant's Motion is due to be denied.

    **C.**    **Section 3553 Factors**

Even if Defendant was able to establish an extraordinary and compelling reason, the Court must make a finding that Defendant would not be a danger to the safety of any person or the community. *See* USSG § 1B1.13(2). On the facts here, the Court cannot make such a finding, and the sentencing factors set forth in 18 U.S.C. §3553(a) weigh strongly against his release.

8

Defendant is serving concurrent life sentences for two murders. Doc. 179. at 1. By arguing that he was wrongly convicted by a jury, Defendant contends he has never been a danger to the community then or now. Doc. 254 at 1–11, 22. The Government strongly disagrees with Defendant's self-assessment, as does the Court. Robertson was convicted by a jury of his peers after a multi-week trial. His codefendants pleaded guilty. The Court is duty-bound to protect the public from danger and a grant of compassionate release to Defendant in this case would not reflect the seriousness of Defendant's offenses, promote respect for the law, adequately deter future crimes, or align with the guideline sentences that similarly situated defendants must serve. As such, the 18 U.S.C. §3553(a) factors weigh heavily against a reduction in sentence, and Defendant's Motion is due to be denied. Accordingly, it is hereby

**ORDERED**:

1. Defendant's Motion for Compassionate Release or Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 249) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on November 30, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
James Robertson, *pro se*